<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MERCHANTS MUTUAL INSURANCE COMPANY**, | |
| Plaintiff, | Civil Action No. 19-20366 (ZNQ) (TJB) |
| v. | **OPINION** |
| **ANTONIO PIRONE,** *et al.*, | |
| Defendants. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon an unopposed Motion for Default Judgment ("Motion", ECF No. 62) filed by Plaintiff Merchants Mutual Insurance Company ("Merchants") against Defendant Antonio Pirone ("Pirone"). In support of the Motion, Plaintiff filed a Memorandum of Law ("Moving Br.", ECF No. 62-1) and a Declaration of Sean Robins ("Robins Decl.", ECF No. 62-2.) After careful consideration of Merchants' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78[1] and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** Plaintiff's Motion for Default Judgment.

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.     BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background[2]

Merchants is an insurance company with its principal place of business in New York and is also authorized to do business in New Jersey.  ("Compl.", ECF No. 1 ¶ 1.)  Pirone is a New Jersey citizen and resident.  (*Id.* ¶ 2.)  On October 18, 2017, Pirone completed and signed a Commercial Insurance Application (the "Application") to insure a 2005 Ford F-350 truck, VIN 1FTWX31P35EC59904 (the "Ford F-350").  (*Id.* ¶ 7; ECF No. 1-1 Ex. A.)  The Complaint alleges that Pirone submitted the Application to Merchants while knowingly including false and misleading statements with the intention that Merchants rely on this false information to issue a commercial auto policy to Pirone.  (Compl. ¶ 8.)  In the Application, Pirone stated that his vehicle was a "business auto" used in a "landscaping" business, that it had not been declined for coverage in the past five years (or three years in New York and Kansas), and that it was not involved in any losses in the past three years.  (*Id.* ¶ 9; ECF No. 1-1 Ex. A.)  Merchants subsequently issued two commercial auto policies to Pirone, both under Policy Number CAPI069855, covering the policy periods of October 18, 2017 to October 18, 2018 and October 18, 2018 to October 18, 2019 (the "Policies") (Compl. ¶ 10; *see also generally* ECF No. 1-1 & 1-2 Ex. B.)

On July 30, 2019, Pirone was involved in an accident (the "July 30, 2019 Accident") while operating the Ford F-350.  (Compl. ¶ 11.)  Michael Reiss was injured in the accident and died several days later.  (*Id.*)  While investigating the July 30, 2019 Accident, Merchants discovered that the Ford F-350 was not, in fact, used for commercial or business activity, nor was it used in a

---

[2] In keeping with guidance from the Court of Appeals, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true" for the purposes of the current motion.  *Comdyne I, Inc. v. Corbin*, 98 F.2d 1142, 1149 (3d Cir. 1990).  Further, the Court also considers any "document integral to or explicitly relied upon in the complaint[,]" including the Exhibits attached to the Complaint and to the Motion.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Great Lakes Ins. SE v. Helme*, Civ. No. 21-2066, 2022 WL 17812921, at *4 n.1 (M.D. Pa. Dec. 19, 2022) (citing *Burlington*).

landscaping business as Pirone had indicated in the Application.  (*Id.* ¶ 12.)  During the course of the investigation, Pirone told Merchants' investigators that the Ford F-350 was not used in a landscaping business but rather for his own personal use.  (ECF No. 1-2 Ex. C at 81.)[3]  Investigators also discovered Pirone "had falsely stated in the Application that there had been no losses involving the vehicle in the past three (3) years, when in fact a fire had occurred in 2015 which extensively damaged the vehicle" (Compl. ¶ 14; *see also* ECF No. 1-2 Ex. C at 81, 86) and that "Pirone had also falsely stated in the Application that coverage for the vehicle had never been declined by any other insurer in the past [five] years, when in fact coverage had been declined by a number of other insurers."  (*Id.*)  Merchants alleges Pirone's misrepresentations are material because Merchants would never have issued the subject Policies had it known that the vehicle was not to be used for a commercial purpose "because Merchants does not issue policies for single vehicles for personal use in New Jersey."  (*Id.* ¶ 15.)  Based on Pirone's alleged misrepresentations, Merchants sent Pirone a letter dated October 17, 2019, rescinding and voiding the Policies "from the inception date of . . . October 18, 2017" (*Id.* ¶ 16; ECF No. 1-2 Ex. D at 104–05.)  On October 29, 2019, Merchants sent Pirone a check remitting to him with interest the sum of his previously paid insurance premiums on those Policies.  (Compl. ¶ 16; ECF No. 1-2 Ex. D at 108.)

In its Complaint, Merchants seeks a declaratory judgment in this action.  Specifically, Merchants requests:

> (a) a declaration that the Merchants policies issued to Pirone are rescinded and deemed void *ab initio* because of a material misrepresentation in the application submitted by Pirone to Merchants;
>
> (b) a declaration that Merchants has no obligation to defend and/or indemnify Pirone or any other person or entity in connection with an accident involving Michael Reiss that occurred on or about July 30, 2019 or any other occurrence, claim, or suit that

---

[3] For clarity, the Court uses ECF pagination when referring to Exhibits to the Complaint (ECF Nos. 1-1 & 1-2).

would otherwise fall within the scope of coverage under the rescinded policies; and

(c) a declaration that Merchants has no obligation to pay damages to defendants nor to any third party in connection with the July 30, 2019 accident or any other occurrence, claim, or suit that would otherwise fall within the scope of coverage under the rescinded policies.

(Compl. ¶ 6; Moving Br. at 1–2.)

### B. Procedural Background

Merchants' filed its Complaint on November 15, 2019 naming Pirone as a Defendant. (Compl. ¶2; Moving Br. at 1; ECF No. 62-2 ¶ 2.) The Complaint also named as nominal defendants the Estate of Michael Reiss and Elisabeth Reiss (together, the "Reiss Defendants"), who upon information and belief is the spouse of the deceased Michael Reiss, in her individual capacity and as the executrix of his estate.[4]  (Compl. ¶ 3; Moving Br. at 2; ECF No. 62-2 ¶ 3.) The Complaint and summons were served upon Pirone and the Reiss Defendants on November 20, 2019. (ECF Nos. 4 & 5.) Pirone's Answer was due on December 11, 2019 (ECF No. 4), but as of that date Pirone failed to file an Answer or other responsive pleading to the Complaint or otherwise appear in this action. (ECF No. 12; Moving Br. at 7.) On December 17, 2019, Pirone filed a Notice of Chapter 7 Bankruptcy in the Bankruptcy Court, which automatically stayed proceedings against Pirone. (*Id.*) On September 21, 2020, noting the entry on June 20, 2020 of a final Discharge Order by the Bankruptcy Court, this Court lifted the automatic stay as to Pirone, and ordered, *inter alia*, that "Defendant Pirone is directed to file an answer, or otherwise move to dismiss this action, no later than October 12, 2020." (ECF No. 12; Robins Decl. Ex. H.)

On November 30, 2020, the Court conducted a telephone status conference for the purpose of resolving discovery issues. (ECF No. 15.) As of that date, Pirone had failed to file either an

---

[4] Per the stipulation dated December 21, 2023, the Reiss Defendants are no longer parties in this action. (ECF No. 61; *see also* Moving Br. at 2; Robins Decl. Ex. L.)

4

Answer or any responsive pleading to Plaintiff's Complaint.  At that time, the Court directed the Clerk of Court to enter default as to Pirone "for failure to plead or otherwise defend," which the Clerk did.  (*Id.*)

On May 11, 2021, Merchants filed their first motion for default judgment against Pirone. (ECF No. 20.)  Although the Reiss Defendants opposed the motion (ECF No. 26), Pirone did not file an opposition.  The Court denied the motion on July 16, 2021 on the issue of the Reiss Defendants' standing.  (ECF No. 30.)  The Court ordered "that to the extent Merchants takes the view that the Reiss Defendants lack standing to challenge this declaratory judgment action, it is directed to submit supplemental briefing on that issue within thirty (30) days from the date of this Order[.]"  (*Id.*)  Merchants did not submit any supplemental briefing, and Merchants and the Reiss Defendants agreed on a fact discovery schedule.  (ECF Nos. 31, 35.)  In October 2022, counsel for Merchants informed the Court that, after conferring with Pirone's counsel, it had not been possible to take Pirone's deposition because "Pirone had a recent severe injury with a family member and has been difficult to reach."  (ECF No. 40.)  On May 23, 2023, counsel for Merchants took Pirone's deposition, after numerous delays due to Pirone's unavailability.  (ECF No. 50.)  As of that date, Pirone had still failed to make a formal appearance as a party in this action.

On December 21, 2023, counsel for Merchants and the Reiss Defendants entered into a stipulation voluntarily dismissing the Reiss Defendants from this matter.  (ECF No. 61; *see also* Moving Br. at 2; Robins Decl. Ex. L.)  The dismissal left Pirone as the sole defendant, who has not appeared in this action since its inception.  (*Id.*)  On January 9, 2024, after dismissal of the Reiss Defendants, Merchants filed the instant unopposed Motion pursuant to Rule 55(b)(2).  (*See generally* Motion.)

## II.   **LEGAL STANDARD**

Rule 55 governs default and default judgment.  *See* Fed. R. Civ. P. 55.  Pursuant to the Rule, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After an entry of default, a plaintiff may seek default judgment under either Rule 55(b)(1) or Rule 55(b)(2).  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  However, "entry of default judgments is disfavored as decisions on the merits are preferred."  *Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Super 8 Motels, Inc. v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)).  In other words, the district court must remain mindful that entry of default "is a sanction of last resort."  *Id.*

"Before entering default judgment, the court must address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties."  *U.S. Life Ins. Co. City of N.Y. v. Romash*, Civ. No. 09-3510, 2010 WL 2400163, at *1 (D.N.J. June 9, 2010) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).  After that, "[i]n assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the Court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]"  *Paniagua*

*Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 599–600 (D.N.J. 2016) (internal quotation marks omitted).

Before determining whether imposing the extreme sanction of default judgment is proper, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default judgment, and (3) the culpability of the party subject to default. *Sabinsa Corp. v. Prakruti Prods. Pvt. Ltd.*, Civ. No. 14-4738, 2023 WL 7298471, at *6 (D.N.J. Nov. 6, 2023) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71 (3d Cir. 1987)). An entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear or answer does not vitiate the Court's responsibility to examine the complaint." *Paniagua Grp.*, 183 F. Supp. 3d at 600 (internal quotation marks omitted).

## III.   DISCUSSION

### A.   SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND VENUE

This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Merchants and Pirone (they are citizens of different states) and the amount in controversy exceeds $75,000.[5] (*See* ECF No. 1-1 Ex. B at 15; ECF No. 1-2 Ex. B at 7 (showing the Policies' liability limit of $500,000); ECF No. 1-2 Ex. D at 108 (showing a check remitting to Pirone with interest the insurance premiums he had paid under the Policies in an amount of $3,362.01). Although Merchants does not allege a specific amount in controversy in the Complaint, the Court must defer to a plaintiff's pleadings as to the amount in controversy so

---

[5] In its Moving Brief, Plaintiff claims that the Complaint sought declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). (*See* Moving Br. at 1.) However, the Complaint fails to specifically cite or reference the Declaratory Judgment Act. Therefore, in the absence of an amended Complaint, the Court opines only that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

long as they were filed in good faith and it cannot be shown to a legal certainty that the plaintiff cannot recover above $75,000. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *State Farm Fire and Cas. Co v. Hines*, App. No. 21-2354, 2022 WL 7973331, at *2 (3d Cir. Oct. 14, 2022). Here, Pirone does not contest the amount in controversy and there is no reason to assume Merchants' claims are made in bad faith.[6] Therefore, the Court defers to Merchants' statement that the amount in controversy exceeds $75,000 (*see* Compl. ¶ 4) and is satisfied that it possesses diversity jurisdiction over this action.

The Court is also satisfied that it has personal jurisdiction over Pirone. The Complaint includes allegations, which the Court accepts as true in this context, that Pirone was a citizen and resident of New Jersey at the time the events in question occurred. (*See* Compl. ¶ 2.)

Finally, to the extent Pirone has not already waived the defense of improper venue by failing to appear, *see Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *Commercial Cas. Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 180 (1929), the Court finds venue properly lies with this Court pursuant to 28 U.S.C. § 1391(b), because Pirone resides in this District and because the events at issue (specifically Pirone's misrepresentations) are alleged to have occurred within this District. (*See* Compl. ¶ 5; ECF No. 1-1 Ex. A.)

## B.   SUFFICIENT PROOF OF SERVICE

Before granting default judgment, the Court must also consider whether process was properly served on Pirone. Rule 4(e)(1) provides, in relevant part, that "an individual . . . may be

---

[6] Moreover, given that the underlying motor vehicle accident between Pirone and Reiss involved a fatality, the Court finds that it can be reasonably inferred that Pirone's potential liability for that accident (and therefore Merchants' potential exposure) exceeds $75,000.

served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  New Jersey law allows for service by the same means as contemplated under the federal rules, *see* N.J. Ct. R. 4:4-4; Fed. R. Civ. P. 4, or by alternative means "when personal service within the state cannot be effected." *Argonaut-Midwest Ins. Co. v. Colt Logistics Inc.*, Civ. No. 18-11783, 2018 WL 6716104, at *2 (D.N.J. Dec. 20, 2018) (citing N.J. Ct. R. 4:4-4(b), 4:4-5).

Pirone was served on November 20, 2019 at his address in Princeton, New Jersey (*see* ECF No. 4), and there is no indication that the Court obtained incorrect contact information for Pirone. (*See* ECF No. 4; *see also* ECF No. 1-2 Ex. C at 81, 84 (Pirone's insurance application providing his address is the same address at which he was served).)  The Court therefore finds that service on Pirone was proper.

### C.    SUFFICIENT CAUSE OF ACTION

Before entering default judgment, the Court must also review the Complaint and determine whether the "unchallenged facts constitute a legitimate cause of action." *Directv, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller & Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).  The Court must also accept Merchants' "well-pleaded" allegations as true.  *Comdyne I*, 908 F.2d at 1146, 1149.

#### 1.    Equitable Fraud Standard

New Jersey courts have endorsed rescission of insurance policies as "an available and necessary remedy to combat fraudulent behavior by an insured." *Rutgers Cas. Ins. Co. v. LaCroix*, 194 N.J. 515, 527 (2008) (citation omitted).  An insurer may rescind an insurance policy *ab initio* (from its inception) when material misrepresentations "strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false

claims." *Rutgers Cas.*, 194 N.J. at 528 (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 539 (1990)).

Under New Jersey law, "equitable fraud provides a basis for a party to rescind a contract." *First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136 (2003) (citing *Jewish Ctr. of Sussex Cty. v. Whale*, 86 N.J. 619, 432 A.2d 521 (1981)). A claim of equitable fraud requires: "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." *First Am.*, 177 N.J. at 136–37 (citation omitted). "[W]hen a factual misrepresentation is made in an insurance application, rescission may be justified if the insurer relied on the misrepresentation in determining whether to issue the policy." *Henry v. Bhowmik*, Civ. No. A–3331–15T4, 2018 WL 759936, *3 (App. Div. Feb. 8, 2018) (citing *Citizens United Reciprocal Exch. v. Perez*, 223 N.J. 143, 150–151 (2015)).

A misrepresentation will be considered material "if, when made, 'a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action. In effect, materiality [is] judged according to a test of prospective reasonable relevancy.'" *Palisades Safety & Ins. Ass'n v. Bastien*, 175 N.J. 144, 148–49 (2003) (quoting *Longobardi*, 121 N.J. at 542) (alteration in original). Additionally, a misrepresentation is material if it "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate of premium." *IFA Ins. Co. v. Mercury Indem. Co. of Am.*, Civ. No. L–2606–09, 2011 WL 3329363, *4 (App. Div. Aug. 4, 2011) (quoting *Mass. Mut. Life Ins. Co. v. Manzo*, 122 N.J. 104, 115 (1991)). *See, e.g.*, *Allstate Ins. Co. v. Meloni*, 98 N.J. Super. 154, 158–59 (App. Div. 1967) (affirming holding that insured's misrepresentation that no member of the household had ever had their driver's license suspended was material, justified rescission of the applicable policy *ab initio*, and

absolved insurer from any obligation thereunder); *Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n*, 224 N.J. Super. 552, 556–57 (App. Div. 1988) (false representation that insured's vehicle was registered in New Jersey was material and justified rescission of the policy).  (*See also* Moving Br. at 15.)  The materiality of a fact is assessed from the insurer's perspective.  *See Chen v. Vigilant Ins. Co.*, 2009 WL 2341444, *4 (App. Div. July 31, 2009) (citing *Palisades*, 175 N.J. at 148).

When an insurer seeks only equitable remedies such as recission, the burden for proving equitable fraud is lower than that required to prove legal fraud.  *See Bancorp Bank v. Condor Devs., LLC*, Civ. No. 15–4451, 2017 WL 3393804, *3 n.5 (D.N.J. Aug. 7, 2017) (citation omitted). The insurer seeking to rescind for equitable fraud "need not prove that the insured had knowledge of the falsity and intended to deceive."  *Sesztak v. Great N. Ins. Co., Inc.*, Civ. No. A-2846-15T4, 2018 WL 5930554, *5 (App. Div. Nov. 14, 2018) (citing *Ledley v. William Penn Life Ins. Co.*, 138 N.J. 627, 635 (1995)).  "Even an innocent misrepresentation can constitute equitable fraud justifying rescission."  *Ledley*, 138 N.J. at 635 (citation omitted).

2.     The Complaint Adequately Alleges Equitable Fraud

Here, the facts of the Complaint adequately allege the first element of an equitable fraud claim—that Pirone made material misrepresentations in obtaining the Policies.  In his signed and notarized statement dated October 11, 2019, included as Exhibit C to the Complaint, Plaintiff admits the following, in relevant part:

> Since I reassumed the title on October 12, 2017 [sic] the 2005 Ford F350 it was registered and used as a *personal/passenger motor vehicle and the business use of the vehicle ceased at that time*.  The 2005 Ford F350 *did not have commercial plates after I reassumed the title in 2017 and I did not use the truck for business purposes*. . . . *I did not take ownership or work for my father's landscaping company or own any other business* in the past two years.  My father retired from the landscaping company sometime prior to October 12, 2017 and *I did not take ownership* of same.  *I have only used my 2005 Ford F350 for personal use* to include driving to and from my employment as a dump truck driver for Alex DiFalco.  *I was forced*

11

> *to insure the 2005 Ford F350 pickup under a commercial policy*
> *with Merchants Mutual Insurance Company because I was unable*
> *to obtain a non-commercial policy from any other insurer. . . . I*
> *could not obtain a non-commercial insurance policy as the pickup*
> *has a 22-foot-long utility body, and because in 2015 it caught fire*
> *due to a stereo wire short, after which despite having been declared*
> *a total loss* it was repaired.

(ECF no. 1-2 Ex. C at 81) (emphasis added); *see also* Moving Br. at 17–18.)

There are three categories of misrepresentations alleged in the Complaint. First, the Complaint alleges that Pirone misrepresented on the Application the nature of the vehicle to be insured, such that he falsely stated the Ford F-350 was a "business auto" that would be used for a commercial purpose as part of a "landscaping" business (Compl. ¶¶ 7–9; ECF No. 1-1 Ex. A), when in fact he later admitted to Merchants' investigators that he used it for his own personal uses. (*See* Compl. ¶ 12; *see also* ECF No. 1-2 Ex. C at 81 ("The 2005 Ford F350 did not have commercial plates after I reassumed the title in 2017 and I did not use the truck for business purposes."); *id.* at 86 (Pirone, in responding to the question of why he had registered the Ford F-350 under a commercial insurance policy, stated that "nobody would insure it"); *see also* Moving Br. at 21.)

Second, the Complaint alleges that Pirone misrepresented on the Application the lack of any claims or losses during the last five years (*see* Compl. ¶ 9; ECF No. 1-1 Ex. A), when in fact he later admitted to Merchants' investigators that a fire had damaged his vehicle in 2015, leading to extensive losses. (*See* Compl. ¶ 14; *see also* ECF No. 1-2 Ex. C at 81 ("in 2015 [the Ford F-350] caught fire due to a stereo wire short, after which despite having been declared a total loss it was repaired."); *id.* at 86 ("[T]he truck caught fire a couple of years ago . . . maybe more than a couple of years ago."); *see also* Moving Br. at 21–22.)

Third, the Complaint alleges that Pirone misstated on the Application that he had not had any policy or coverage declined, canceled, or non-renewed during the prior three years (*see* Compl. ¶ 9; ECF No. 1-1 Ex. A), when he later admitted to Merchants' investigators that several other insurers had denied him coverage.  (Compl. ¶ 14; *see also* ECF No. 1-2 Ex. C at 81 ("I could not obtain a non-commercial insurance policy as the pickup has a 22-foot-long utility body"); *id.* at 86 ("[n]obody would insure it because it has a utility body when I bought it back."); *see also* Moving Br. at 22.)

Moreover, the Complaint adequately pleads materiality.  The Complaint alleges that Merchants "would not have issued the [P]olicies had Merchants known that the vehicle was not to be used for a commercial purpose because Merchants does not issue policies for single vehicles for personal use in New Jersey."  (Compl. ¶ 15.)  The Complaint adequately alleges that a reasonable insurer (here, Merchants) would have considered the facts Pirone misrepresented relevant to their concerns and important in determining whether to issue the Policies. *Palisades*, 175 N.J. at 148–49 (2003); *Longobardi*, 121 N.J. at 542.  The misrepresented facts were listed as criteria on the commercial Policies (*see* ECF No. 1-1 Ex. A), indicating that those facts—the nature of the vehicle to be insured; the lack of claims or losses; and the lack of prior coverage declinations, cancellations, or non-renewals—were of the kind that "naturally and reasonably influence[d] the judgment" of Merchants in determining whether to issue such Policies, estimating the degree of risk, and/or setting the Policies' premiums. *IFA Ins. Co.*, 2011 WL 3329363, *4 (citation omitted). As such, the Complaint alleges facts justifying recission of the Policies on grounds of material misrepresentation.

Furthermore, the Complaint sufficiently alleges the second element of equitable fraud— intent.  By Pirone's own admission, he made false statements about the Ford F-350 in order to

induce Merchants to issue him with commercial insurance Policies.  (*See* ECF no. 1-2 Ex. C at 81, 86.)  Therefore, not only do the facts in the Complaint and its Exhibits suggest that Pirone made such misrepresentations, but they also suggest that he *knowingly* made such misrepresentations, a higher standard than that required for equitable fraud.  *Ledley*, 138 N.J. at 635.

Lastly, the Complaint includes allegations satisfying the third element of equitable fraud— that Merchants relied to their detriment on Pirone's material misrepresentations in issuing the Policies.  (*See* Compl. ¶ 10; *see also generally* ECF No. 1-1 & 1-2 Ex. B.)  As such, the Complaint sufficiently alleges all the elements of equitable fraud justifying recission of the Policies.

### D.   WHETHER DEFAULT JUDGMENT IS PROPER

Next, the Court considers whether default judgment is proper.  Here, Pirone is subject to default because he has failed to respond to the Complaint.  In the absence of a responsive pleading, there is nothing in the record to indicate that Pirone has any meritorious defenses.

Additionally, Pirone's failure to respond and litigate this action would leave Merchants uncertain regarding the status of its prior contractual obligation to defend Pirone against insurance claims resulting from the July 30, 2019 Accident or any other occurrence, as result of Pirone's fraud or misrepresentations.  Therefore, this Court finds that Merchants has been prejudiced and will continue to be further prejudiced if default judgment is not granted.

Third, this Court finds that Pirone is presumably culpable due to his failure to respond to this action despite being properly served with the Complaint and Summons.  *Slover v. Live Universe, Inc.*, Civ. No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is also presumed culpable where [he] has failed to answer, move, or otherwise respond").  As of the date of this Opinion, Pirone has not responded to the Complaint.  Therefore, the Court will enter default judgment against Pirone.

**IV.**     **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Plaintiff's Motion for Default Judgment.  The Policies will be rescinded and deemed void *ab initio*.  Merchants has no obligation to defend and/or indemnify Pirone or any other person or entity in connection with the July 30, 2019 Accident involving Pirone, or any other occurrence, claim, or suit that would otherwise fall within the scope of the rescinded Policies.  Merchants has no obligation to pay damages to Pirone or any party in connection with the July 30, 2019 Accident, or any other occurrence, claim, or suit that would otherwise fall within the scope of coverage under the rescinded Policies.   An appropriate Order will follow.

Date: **July 9, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**